UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MALIBU MEDIA LLC,                                    MEMORANDUM
                 Plaintiff,                       AND ORDER
    -against-
JOHN DOE subscriber assigned IP address
148.74.72.35,                                        19-CV-4336 (GRB) (JO)
                 Defendant.
----------------------------------------------------------------X

James Orenstein, Magistrate Judge:

       In the above captioned case, as in 150 others just like it filed in this district since 2015, plaintiff Malibu Media, LLC ("Malibu ") has filed a Complaint accusing a "John Doe" defendant, identified only as the subscriber of an Internet Protocol ("IP") address, of copyright infringement. *See* Docket Entry ("DE") 1 (Complaint).[1] Malibu Media seeks leave *ex parte* to engage in expedited discovery. Specifically, it asks to serve a subpoena on the Internet Service Provider (the "Provider") associated with the pertinent IP address, thus requiring the Provider to identify the subscriber of internet services at the address. For the reasons set forth below, I deny the request.

I.    <u>Background</u>

       Malibu is a California corporation engaged in the production and distribution of adult video content through its "X-art.com" website. *See* Complaint ¶ 8; DE 6-1 (declaration of Colette Pelissier ("Pelissier Decl."); *see also Malibu Media v. Doe*, 2016 WL 4574677, at *1 (E.D.N.Y. Sept. 1, 2016); *In re Malibu Media Adult Film Copyright Infringement Cases*, 2015 WL 3605834, at *1 (E.D.N.Y. June 8, 2015). It alleges that defendant Doe violated Malibu's exclusive rights under the Copyright Act by willfully using BitTorrent (an internet-based peer-to-peer file sharing technology) to download its original works, copy them, and distribute them to others. Complaint ¶¶ 3, 20, 11-26, 33-34; 17

---

[1] In addition to the 150 complaints it has filed in this district against individual John Doe defendants since April 6, 2015, Malibu also filed seven cases in this district in 2012, each of which asserted claims against multiple Doe defendants. In the 2012 filings, Malibu named a total of 123 defendants.

U.S.C. §§ 106, 501. Malibu does not know Doe's identity; it knows only the IP address used for the allegedly infringing downloads. It therefore seeks to subpoena the Provider as the only source of information able to identify the subscriber of that internet service. *See* DE 6 (motion); Pelissier Decl.; DE 6-2 (declaration of Patrick Paige ("Paige Decl.")); DE 6-3 (declaration of Tobias Fieser ("Fieser Decl.")); DE 6-4 (supporting memorandum) ("Memo.") at 1; Fed. R. Civ. P. 45.

Malibu argues that it has used "proven IP address geolocation technology" to trace a physical address and that this technology has proven to be accurate "in over 99% of cases." Complaint ¶¶ 5-6. Malibu cannot, however, assert with any certainty that the internet subscriber at this physical address is, in fact, the individual who committed the alleged violations in this case. The assumption that the two are the same "is tenuous, and … has grown more so over time.… [I]t is no more likely that the subscriber to an IP address carried out … the purported illegal downloading … than to say an individual who pays the telephone bill made a specific telephone call." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) (report and recommendation) (Brown, then-magistrate judge), *adopted sub nom. Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012) ("*BitTorrent*").[2]

---

[2] Although it has no effect on the legal analysis below, I note that Malibu has filed all of its complaints in this district – accusing 273 distinct defendants – in the Central Islip vicinage. In light of Malibu's confidence in the accuracy of its geolocation technology, the statistic implies the unlikely possibility that of the roughly eight million residents of this district, *see* Eastern District of New York, https://www.nyed.uscourts.gov (last accessed on March 25, 2020) (describing district's population), the ones who violate copyright laws to view adult videos are concentrated in the district's two easternmost counties. Three rather more plausible explanations come to mind. First, Malibu may have abandoned, for reasons it finds sufficiently compelling, the enforcement of its perceived rights with respect to infringers who reside in Queens, Brooklyn, and Staten Island rather than litigate claims against them before the judges of the Brooklyn vicinage. Second, Malibu's geolocation technology may be more prone to error than Malibu asserts. Third, Malibu may have misunderstood or misreported the results of the application of that geolocation technology. The first possibility suggests a rather less assiduous commitment to copyright enforcement than Malibu's arguments on this motion would suggest. The latter two possibilities suggest that this court should

Accordingly, I asked Malibu to provide the following information: (1) the number of cases it has filed in this court, from 2015 to the present, in which it has been granted leave to serve a third-party subpoena, (2) a breakdown of the specific resolutions in those cases (*i.e.*, voluntary dismissal due to settlement, voluntary dismissal without settlement, trial, etc.), (3) the number of instances in those cases in which it could not determine if the ISP subscriber sued was the infringing party at whom the complaint was directed, and (4) the investigation it intends to undertake, using the information it seeks to have the subpoena recipient produce, that will properly allow it to name a specific individual as the alleged infringer of its copyright. *See* Order dated December 19, 2019. Malibu responded on February 7, 2020. *See* DE 11 (letter response).

II.   Discussion

Absent a court order, a litigant in federal civil case "may not seek discovery from any source before the parties have conferred[.]" Fed. R. Civ. P. 26(d)(1). The decision to grant or deny expedited discovery, like other aspects of discovery management, is committed to the court's discretion. *See, e.g.*, *Ceglia v. Zuckerberg*, 600 F. App'x 34, 37 n.4 (2d Cir. 2015) (citing *Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir. 1994)); *Raza v. City of New York*, 998 F. Supp. 2d 70, 75 (E.D.N.Y. 2013) (citing cases). "Although courts have applied a 'flexible standard of reasonableness and good cause' to requests for expedited discovery, they apply 'particularly careful scrutiny' when plaintiffs make such requests *ex parte*." *Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14, 16 (E.D.N.Y. 2019) ("*Strike 3*") (quoting *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012)).[3]

---

hesitate to rely on Malibu's assertion that the subpoena it seeks will lead to the identification of a defendant over whom it may exercise territorial jurisdiction.

[3] In *Strike 3*, I denied similar requests for expedited discovery made in thirteen separate cases under circumstances virtually identical to those of this case, and I restate or summarize here much of the analysis in that decision.

3

If the court grants leave to conduct expedited discovery on a showing of good cause, or if the parties have had their initial discovery planning conference and are therefore permitted under Rule 26 to seek discovery, a party may then serve a subpoena requiring a non-party to disclose records or provide testimony. *See* Fed. R. Civ. P. 45. In doing so, the party serving the subpoena has an obligation to "take reasonable steps to avoid imposing undue burden or expense" on the recipient and "[t]he court for the district where compliance is required must enforce this duty[.]" Fed. R. Civ. P. 45(d)(1). A person upon whom a subpoena imposes undue burdens may seek to quash or modify it. Fed. R. Civ. P. 45(d)(3)(iv).

Malibu asserts that the court should apply the five-factor test from *Arista Records, LLC v. Doe 3*, 604 F.3d. 110, 118-19 (2d Cir. 2010) ("*Arista*") to determine whether or not to grant its motion seeking to identify the internet service subscriber. *See* Memo. at 5-14. In *Arista*, the court affirmed the denial of an anonymous defendant's Rule 45 motion to quash a recording company's subpoena to a provider seeking the identity of subscribers whose accounts had been used to download and distribute allegedly infringing music. *Arista*, 604 F.3d at 113. Weighing the defendant's asserted First Amendment right to anonymity against the plaintiff's interest in vindicating its copyright claim, the court identified five "principal" factors to consider:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, ... (2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... (4) [the] need for the subpoenaed information to advance the claim, ... and (5) the [objecting] party's expectation of privacy.

*Id.* at 119 (quoting *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004)).

However, as I discussed in greater detail in *Strike 3*, the utility of the *Arista* factors in deciding the kind of motion now before the court is limited for two reasons. First, *Arista* itself acknowledged that the factors set forth were the "principal" factors, but not the only ones to be

used when resolving a Rule 45 motion to quash. *Arista*, 604 F.3d. at 119. Second, in *Arista*, the court considered only whether a subpoena that the plaintiff had already properly issued under Rule 26 (after securing judicial leave to conduct expedited discovery) should be quashed as unduly burdensome under Rule 45. In making that decision, the circuit court had no occasion to review the propriety of the decision that the plaintiff had made the threshold showing of good cause to engage in expedited discovery; it considered only whether the plaintiff, in issuing the subpoena, had adhered to the standards of Rule 45. As I have discussed previously, the two inquiries are qualitatively different: one concerns whether to allow for any expedited discovery at all, while the other relates to how such discovery, if allowed, should be conducted. *See Strike 3*, 331 F.R.D. at 17.

Malibu correctly notes that courts often apply the *Arista* factors in resolving motions like the one at issue here. *See, e.g., Strike 3 Holdings, LLC v. Doe*, 2019 WL 4752094, at *2 (E.D.N.Y. Sept. 30, 2019); *In Re Various Strike 3 Holdings, LLC Copyright Infringement Cases*, 2018 WL 3404142, at *1 (E.D.N.Y. July 11, 2018). But routine usage is not law. Malibu does not cite – and I cannot find – any Second Circuit decision that relied on the *Arista* factors to resolve a Rule 26 motion for expedited discovery, as opposed to a Rule 45 motion to quash on First Amendment grounds. Thus, while *Arista* is a useful part of the analysis, it is not controlling law for purposes of the instant motion. *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 2011 WL 1326365, at *4 (E.D.N.Y. Mar. 30, 2011) ("district courts are bound … to follow controlling precedents of the courts of appeals for their circuits") (citing *Jenkins v. United States*, 386 F.3d 415, 418 (2d Cir. 2004) (other internal quotations omitted)).

The pertinent question is whether there is good cause to exercise my discretion to grant an *ex parte* motion for expedited discovery. The *Arista* factors inform that analysis but do not end it. Rather, in regulating not only the scope of discovery but also its timing, I must consider "the entirety

of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (internal citations omitted) (emphasis in original). Moreover, in the similar circumstances of *BitTorrent*, while Judge Brown ultimately applied *Arista* to an extent, he nevertheless reasoned that the case was "facially distinguishable" from the one then before him because in *Arista* there were 236 total files downloaded in an university setting which made it "far more likely" that the internet subscriber either conducted or was aware of the illegal downloading, as opposed to the residential setting and single pornographic film downloaded by each John Doe defendant in that case. *BitTorrent*, 296 F.R.D. at 88.[4]

Malibu argues that it needs Doe's identifying information to serve process and proceed with this case. *See* Memo. at 12. It states that its goal in filing this lawsuit, as well as similar lawsuits across the country, is "to deter and stop the infringement." *Id.* at 3. Malibu Media further argues that it does not engage in improper litigation tactics and that it has "chosen to file suit only against the worst of the worst infringers – *i.e.* those that have repeatedly stolen Plaintiff's content over a long period of time." *Id.* at 3-4, 13.

I conclude that these arguments fail to establish good cause for expedited discovery. Allowing expedited discovery in these circumstances creates a risk that Malibu will be in a position to effectively coerce the identified subscribers into paying thousands of dollars to settle claims that may or may not have merit, so as to avoid either the cost of litigation or the embarrassment of being sued for using unlawful means to view adult material. As another court has found in denying a similar motion for expedited discovery for a failure to show good cause, Malibu has an abusive

---

[4] While Malibu asserts in its Complaint that the defendant in this case distributed four different copyrighted works, its investigator only refers to one in his declaration and makes no mention of the additional purported alleged copyright violations. *See* Complaint ¶¶ 18-24; Fieser Decl. ¶¶ 9-11.

history of using "the federal courts only to obtain identifying information in order to coerce fast settlements." *Malibu Media, LLC v. Doe*, 2015 WL 4092417, at *3 (S.D.N.Y. July 6, 2015) ("*Malibu*").

Malibu argues that such concerns about its past practices and the potential for future abuse can be managed: in part because it is willing to accept court-ordered limitations regarding initiating settlement discussions and the production of Doe's identifying information, and in part because it imposes on itself certain guidelines for selecting cases to prosecute once it receives the subpoenaed information. *See* DE 11 at 2-4; Memo. at 4-5. Other courts have accepted such arguments as grounds for granting expedited discovery. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, 2019 WL 78987, at *4 (S.D.N.Y. Jan. 2, 2019) (citing cases). For the reasons set forth below, I do not.

While Malibu's stated commitment to ethical conduct may be genuine in this instance, the company has previously "flagrantly disregarded" prior court-ordered subpoena restrictions that were designed to forestall coercive settlement tactics. *See Malibu*, 2015 WL 4092417, at *4 (citing *Malibu Media, LLC v. Downs*, 2015 WL 12734020 (S.D. Ohio Feb. 9, 2015); *BitTorrent*, 288 F.R.D. at 236). Moreover, as a practical matter, its assertions are no more than a promise that a court must hope it will fulfill because it has almost no realistic prospect of meaningful judicial oversight. Upon a review of the 150 cases Malibu has filed in this district in the last five years, not one has resulted in adversarial testing of its claims, and only seven have seen an identified defendant file an answer, with each of these resolved via settlement or voluntary dismissal within four months of the defendant's appearance.[5]

---

[5] *See Malibu Media, LLC v. Doe*, 15-CV-2732 (JFB); *Malibu Media, LLC v. Doe*, 15-CV-3489 (ADS); *Malibu Media, LLC v. Doe*, 15-CV-3492 (DRH); *Malibu Media, LLC v. Doe*, 15-CV-3503 (JMA); *Malibu Media, LLC v. Doe*, 15-CV-4802 (SJF); *Malibu Media, LLC v. Doe*, 17-CV-6913 (SJF); *Malibu Media, LLC v. Doe*, 18-CV-5152 (ENV).

I recognize that other courts have held that plaintiffs in similar cases should not be prevented from receiving expedited discovery in a given case based upon past litigation practices and statistics-based concerns. *See Strike 3 Holdings, LLC v. Doe*, 2019 WL 5459693, at *2 (S.D.N.Y. Oct. 9, 2019); *Strike 3 Holdings, LLC v. Doe*, 2019 WL 3859514, at *2 (D. Conn. Aug. 16, 2019). I respectfully disagree. Courts need not and should not ignore a serial litigant's abusive history: while it is not necessarily a bar to future relief, it is something that a court should consider in determining whether a party has demonstrated good cause to depart from normal procedures. Expedited discovery is the exception not the norm, and Malibu's history does not help it establish good cause for continuing to grant it the precise kind of exceptional procedure that it has previously abused.

Malibu notes that after it receives the identifying information it seeks, it undertakes an effort to determine if the subscriber was the likely infringer, and additionally evaluates a number of other criteria when deciding whether or not to proceed with its litigation of the case including whether the subscriber has previously been sued under a different IP address, or whether the subscriber showed verifiable financial hardship or was in the military. *See* DE 11 at 2-3. As I discussed in *Strike 3*, while such self-restraint is admirable, it also means that allowing expedited discovery necessarily carries the risk that Malibu will use the leverage it thereby gains against a mix of liable and innocent actors to discriminate against them on grounds other than those related to the merits of their claims. *See Strike 3*, 331 F.R.D. at 18-19. Such risks may arise in many other circumstances over which courts have no control, but that does not mean there is good cause to deviate from normally applicable rules to incur the risk in this case. I conclude there is not.

First, as Malibu's history makes clear, it is unlikely that the company will use the information it seeks to litigate this case in court. Of the 150 cases Malibu has filed in the last five years, only 28 (including this one) remain pending. Of the 122 cases that have been resolved, Malibu reports that it

8

settled 57 and voluntarily dismissed 65, though it claims that it is not able to identify the precise reasons for each of the voluntary dismissals. *See* DE 11 at 2. As noted above, only seven of the Doe defendants have filed answers, and each then resolved the case without further adversarial testing of Malibu's claims. There is no good reason to allow expedited discovery, particularly on an *ex parte* basis, to secure information that will not actually be used under judicial supervision to resolve the case on the merits.

Second, Malibu's voluntary dismissal of more than a third of the identifiable cases (57 out of 149) further undermines the proposition that good cause exists to allow expedited discovery. Malibu claims to be unable to state in how many cases this was done because it could not confirm that the named defendant was actually the alleged infringer, but yet in each case filed by Malibu, the named defendant is the internet service subscriber whose identity will be revealed in the records Malibu hopes to subpoena. Malibu acknowledges that in some number of these cases, the "Doe" it has sued – that is, the subscriber – will prove to be someone other than the person who engaged in the allegedly unlawful conduct the Complaint describes. *See id.* It is reasonable to assume that in the substantial number of cases that Malibu voluntarily dismissed, it was either unable to identify the actual infringer, or identified the infringer as someone other than the subscriber. It is thus apparent that Malibu is deliberately asserting claims in a scattershot fashion against a broad array of individuals simply because it is confident that many of them will be liable – even if almost as many of them are not.[6]

---

[6] Indeed, the lack of certainty that the IP address subscriber Malibu accuses in a given case will prove to be the person who actually engaged in the allegedly infringing activity has led some courts to find complaints similar to the one here to be insufficient to state a copyright claim. *See, e.g., Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1144 (9th Cir. 2018); *Malibu Media v. Park*, 2019 WL 2960146, at *6 (D.N.J. July 9, 2019); *see also Strike 3 Holdings, LLC v. Doe*, 2019 WL 5446239, at *6-8 (D.N.J. Oct. 24, 2019).

Third, the results of Malibu's prior subpoenas belie its argument that expedited discovery is necessary to deter copyright violations. As was the case in *Strike 3*, Malibu's enforcement program – in which some alleged infringers settle for unknown amounts and others face no consequence at all – leaves prospective infringers with no way to ascertain from public records the likely consequences of their contemplated actions. *See Strike 3*, 331 F.R.D. at 19. Even if such observers might speculate that the minority of Malibu's cases that resulted in settlement did so on terms that required some level of payment by the alleged infringer, I cannot conclude that the information would suffice to deter any misconduct. If Malibu is achieving any meaningful deterrence as a result of its litigation practices, it may conceivably result from public awareness of the number of complaints it files. But granting expedited discovery would do little if anything to advance the deterrent effect resulting from awareness of the complaints themselves. I therefore conclude that because Malibu does so little to prosecute its claims after securing leave to conduct expedited discovery, granting leave to issue subpoenas in this case will do little if anything to deter future copyright violations. As a result, Malibu's interest in enforcing its rights does not constitute good cause to allow premature subpoenas.

Finally, I respectfully disagree with Malibu's argument that, absent leave for expedited discovery to jump-start its investigations of allegedly infringing activity, it will be unable to protect its copyrights. *See* Memo. at 2. As I discussed in *Strike 3*, existing federal statutes and rules may not provide a company like Malibu with an effective method to combat the particular form of infringing activity that occurs over peer-to-peer file sharing networks. But that is a reason to consider amending current law to adapt to modern technology; it is not a reason for the court to rewrite that law. *See Strike 3*, 331 F.R.D. at 19-20. To the contrary, attacking the problem by asking judges in 150 cases in just one district (and well over one thousand across the country) to consider the same

10

motion and achieve a patchwork of results is plainly inefficient. Rather, it should be left to Congress to remedy the lack of enforcement mechanisms – something it has specifically considered doing in the past. *See id.* at 20.

Moreover, Malibu is simply wrong in positing that denying it expedited discovery will vitiate its intellectual property rights. If Malibu proves that a specific defendant has infringed one of its copyrights, the court will of course vindicate its claim and order an appropriate remedy. The question here is therefore not whether companies like Malibu can enforce their rights, but rather how much collateral damage courts will allow those companies to impose on non-infringers as a prophylactic measure to ensure that no actual infringement escapes punishment (except in those cases where the companies decide to let them do so). Courts do sometimes create such over-inclusive prophylactic rules where the rights at stake are fundamental and the risks attendant to the violation of those rights can be catastrophic. *See, e.g.*, *Mapp v. Ohio*, 367 U.S. 643 (1961) (establishing exclusionary rule to deter fourth amendment violations); *Miranda v. Arizona*, 384 U.S. 436 (1966) (establishing prophylactic rule to avoid fifth amendment violations). But courts have no similar authority to provide for such overprotection in the copyright context.

The rights people enjoy under the Fourth and Fifth Amendments exist independent of any legislative action. Indeed, those rights remain in force even when Congress improvidently seeks to restrict them. *See, e.g.*, *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) (invalidating 18 U.S.C. § 2703(d) to the extent it purports to allow the government to search for certain records without satisfying the requirements for a search warrant); *Dickerson v., United States*, 530 U.S. 428, 444 (2000) (finding 18 U.S.C. § 3501 unconstitutional because it impermissibly sought to override *Miranda*). Intellectual property rights, however, are different: the Constitution does not confer them on the people directly, but instead merely authorizes Congress to do so in its discretion. *See* U.S. Const. Art.

11

I, § 8, cl. 8 (empowering Congress "[t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries").

Copyright laws are therefore wholly creatures of the legislative branch. They offer creators the important protection of legislatively defined intellectual property rights for a limited time so that they will have a monetary incentive to engage in creative work. It cannot be seriously questioned that Malibu will continue to have sufficient financial motivation to continue its creative endeavors even if courts do not bend their rules to allow the kind of super-enforcement regime the company seeks in cases like this one. Nor can it seriously be questioned that in many of the cases in which Malibu secures early discovery, some innocent parties will pay to escape the greater cost of litigating meritless claims and some actual infringers will waive their rights to a fair litigation process simply to avoid the collateral consequences of being publicly identified as consumers of Malibu's lawful product. It does not advance any constitutional or legislative goal to risk either of those results. More fundamentally, however, even if Malibu's preference for a more robust enforcement regime makes sense as a matter of policy, it is not the court's role to create it. I therefore conclude that there is no good cause to allow premature discovery in this case.

III.    Conclusion

For the reasons set forth above, I deny the plaintiff's motion for expedited discovery.

SO ORDERED.

Dated: Brooklyn, New York
       March 26, 2020

                                                              /s/
                                                    James Orenstein
                                                    U.S. Magistrate Judge